## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**RICARDO CARMOUCHE (#130981)**　　　　　　　　**CIVIL ACTION NO.**

**VERSUS**　　　　　　　　　　　　　　　　　　　**20-478-JWD-SDJ**

**TIMOTHY HOOPER, ET AL.**

### NOTICE

　　　　Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

　　　　In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

　　　　ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

　　　　Signed in Baton Rouge, Louisiana, on December 21, 2020.

_____
　　　　**SCOTT D. JOHNSON**
　　　　**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**RICARDO CARMOUCHE (#130981)**                    **CIVIL ACTION NO.**

**VERSUS**                                                              **20-478-JWD-SDJ**

**TIMOTHY HOOPER, ET AL.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court for screening under 28 U.S.C. §§ 1915(e) and 1915A, and pursuant thereto, the undersigned recommends dismissal of this matter as legally frivolous and for failure to state a claim.[1]

### I.     Background

Plaintiff, Ricardo Carmouche, who is representing himself and is confined at the Elayn Hunt Correctional Center in St. Gabriel, Louisiana, instituted this action pursuant to 42 U.S.C. § 1983 against Timothy Hooper, Todd Barrere, Reginald Brock, Eric Hinyard, and S. Robinson, alleging these Defendants violated his Eighth and Fourteenth Amendment rights by holding Plaintiff in administrative segregation from August 25, 2019, to June 19, 2020.[2] Plaintiff seeks monetary and injunctive relief.[3]

### II.    Law and Analysis

#### a.  Standard of Review

Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action or claim against a governmental entity or an officer or employee of a governmental entity that is

---

[1] The Court recognizes that Plaintiff has not yet paid the full ordered initial filing fee as ordered in R. Doc. 5. However, Plaintiff initially sent a check for $120.00 to the Court in an attempt to pay the filing fee in advance. R. Doc. 1, p. 1. This check was returned to Plaintiff because an order had not yet been entered requiring the payment of the initial fee, and the fee was less than the full filing fee. Considering this confusion and that Plaintiff has clearly attempted to pay the filing fee as ordered (R. Doc. 11), the Court has considered the complaint on the merits.
[2] R. Doc. 3-1, p. 7.
[3] R. Doc. 3-1, p. 14.

frivolous, malicious, or fails to state a claim upon which relief may be granted. The statutes impose similar standards for dismissal.[4] Both statutes are intended to afford the court the ability to separate those claims that may have merit from those that lack a basis in law or in fact.

A claim is factually frivolous if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'"[5] A claim has no arguable basis in law if it is based upon a meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."[6] The law gives judges not only the authority to dismiss a claim that is based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations.[7] Pleaded facts that are merely improbable or strange, however, are not frivolous for purposes of § 1915.[8]

To determine whether the complaint fails to state a claim under § 1915(e)(2)(B)(ii), courts apply the same standard used for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[9] Accordingly, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.[10] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[11] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]

Dismissal may be made at any time, before or after service of process and before or after an answer is filed, if the court determines that the allegation of poverty is untrue; or the action is

---

[4] Plaintiff was granted permission to proceed *in forma pauperis* on August 24, 2020 (R. Doc. 5) so both statutes apply.
[5] *Denton v. Hernandez*, 504 U.S. 25, 33-33 (1992), (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).
[6] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).
[7] *Denton,* 504 U.S. at 32.
[8] *Id.* at 33; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992).
[9] *Hart v. Harrison*, 343 F.3d 762, 763-64 (5th Cir. 2003).
[10] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).
[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[12] *Id.*

frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.[13]

### b. Plaintiff Has Failed to Plead Facts to Demonstrate Any Constitutional Violation

#### i. Plaintiff's Due Process Rights Have Not Been Violated

Plaintiff alleges he was kept in administrative segregation for 300 days over his 30-day disciplinary board sentence[14] and that the original disciplinary report that caused him to be placed in segregation was "fabricated."[15] Further, it appears that Plaintiff is still in administrative segregation,[16] resulting in an approximate stay in administrative segregation of 16 months.

Regarding Plaintiff's initial disciplinary sentence to administrative segregation based upon the alleged falsified disciplinary report, he fails to state a claim as a matter of law. The procedures for prison disciplinary proceedings do not implicate any constitutionally protected liberty interest unless the resulting punishment has subjected an inmate to an atypical and significant deprivation (evaluated in the context of prison life) in which the State might conceivably have created a liberty interest for the benefit of the inmate.[17] A disciplinary sentence of a quarters change is, generally, not so atypical as to give rise to a procedural due process violation,[18] so Plaintiff's initial quarters change to administrative segregation as a result of the disciplinary proceedings did not give rise to a liberty interest.[19]

---

[13] *See Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).
[14] R. Doc. 3-1, p. 7.
[15] R. Doc. 3-1, p. 10.Though Plaintiff states in his Motion for Preliminary Injunction that he is not challenging the original 30-day sentence to segregated confinement, the Court considers it out of an abundance of caution. R. Doc. 12-3, p. 2.
[16] *See, e.g.*, R. Docs. 12, 12-1, & 12-2.
[17] *Sandin v. Conner*, 515 U.S. 472, 486 (1995).
[18] *Id.*
[19] *Id. See also Triplett v. LeBlanc*, No. 13-243, 2015 WL 893057, at *5 (M.D. La. March 2, 2015); *Fisher v. Wilson*, 74 F.App'x. 301, 302 (5th Cir. 2003) (When a plaintiff fails to allege that placement in administrative segregation presented an atypical or significant hardship beyond the ordinary incidents of prison life, giving rise to a constitutionally protected liberty interest that would trigger due-process guarantees, he has failed to state a claim for

Plaintiff's claim regarding his continued confinement in segregation fares no better. The Due Process clause of the Fourteenth Amendment prohibits state officials from depriving "life, liberty, or property without due process of law."[20] Questions of procedural due process involve "two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State…the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient…."[21] Here, because the deprivation is not for life or property, Plaintiff's claims hinge on whether he has been deprived of a liberty interest without adequate procedural protections.

In a case such as the one before the Court regarding heightened confinement of an inmate, a constitutionally protected liberty interest is "limited to freedom from restraint which…imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life;" only then does a liberty interest arise to trigger the protections of the due process clause.[22] "[T]he Due Process clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner."[23] Only when a prisoner demonstrates "extraordinary circumstances" may he maintain a due process challenge to a change in his custodial classification.[24]

In determining whether Plaintiff's confinement poses an atypical and significant hardship evaluated in the context of prison life, the relevant dispositive inquiry employs "a sliding scale, taking into account how bad the conditions are *and* how long they last."[25] Plaintiff has been held

---

violation of due process) and *Mendez v. Johnson*, No. 14-2507, 2014 WL 4782726, at *3 (S.D. Tex. Sep. 23, 2014) (same), citing *Sandin*, 515 U.S. 472.
[20] U.S. Const., Amend. XIV.
[21] *Kentucky Dept. of Corrections v. Thompson*, 409 U.S. 454, 460 (1989).
[22] *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).
[23]*Id.* at 478.
[24] *Id.* at 484.
[25] *Bailey v. Fisher*, 647 Fed.Appx 472, 476 (5th Cir. 2016).

in administrative segregation for approximately 16 months. The Fifth Circuit has suggested that "two and a half years of segregation is a threshold of sorts for atypicality, such that 18-19 months of segregation under even the most isolated of conditions may not implicate a liberty interest.[26]

Plaintiff alleges that being in segregation deprived him of enrolling in programs that could help him obtain early release and prevented him from being a mentor and trustee.[27] Plaintiff alleges, generally, that he has lost "opportunities he would have had to better himself" as a result of being in segregation.[28] The conditions Plaintiff complains of are simply not extraordinary and appear to only pose inconveniences to Plaintiff rather than subjecting him to an atypical and significant hardship evaluated in the context of prison life; thus, no liberty interest has arisen so as to implicate the protections of the Due Process clause.[29] Cases where segregated confinement is sufficiently "atypical" to implicate a due process liberty interest involve circumstances much harsher than those presented here, such as instances where "almost all human contact is prohibited."[30] Further, considering the relatively short duration of approximately 16 months, which includes both the time spent in segregated confinement at EHCC and DWCC,[31] and the suggested threshold of two and a half years by the Fifth Circuit, it is unlikely, if at all possible, Plaintiff could

---

[26] *Id.* (citing *Wilkerson*, 774 F.3d at 855) (internal citations omitted).
[27] R. Doc. 3-1, p. 8.
[28] R. Doc. 3-1, p. 8.
[29] *See Bailey*, 647 Fed.Appx. at 476 (nineteen months in segregation in lockdown 23-24 hours each day, lack of visitation, lack of contact with other prisoners, no religious services or educational programs, and lack of entertainment not sufficiently atypical to warrant due process protections); *Lewis v. Dretke*, 54 Fed. Appx. 795 (5th Cir. 2002) (reduction from trustee status, cell and commissary restrictions, limits on ability to attend religious service, and increase in custody level not significantly atypical for a liberty interest to arise).
[30] *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (conditions at an Ohio Supermax facility implicated a liberty interest because inmates were kept in cells alone with solid metal doors, preventing communication from cell to cell, parole opportunities were lost if housed at the facility, a light was kept on all day and night, and other harsh conditions).These conditions are strikingly different than those presented herein. One important factor courts consider is the availability of interaction with other people while in solitary or lack thereof. *See Queen v. Adams*, No. 11-221, 2012 WL 1081227, at *3 (N. D. Tex. Feb. 27, 2012) (no liberty interest where the plaintiff had contact with "a variety of people."). Plaintiff has not provided any facts to indicate he does not have human contact due to being housed in segregated confinement.
[31] *Compare Wilkerson v. Goodwin*, 774 F.3d 845 (5th Cir. 2014) (a liberty interest arose as a result of segregated confinement lasting nearly 40 years).

5

state a claim for violation of due process absent the *most* extraordinary conditions, which are not present here.³² Accordingly, at this time, Plaintiff cannot state a claim for his continued confinement in segregation.³³

Plaintiff also alleges that his temporary transfer to David Wade Correctional Center's extended lockdown unit for 90 days constituted deliberate indifference.³⁴ The Court interprets this to be another due process claim, and, to the extent Plaintiff is pursuing an Eighth Amendment claim with respect to his confinement at DWCC, same is discussed below. Plaintiff alleges the transfer to DWCC resulted in him losing "thousands of dollars worth of things," limited his telephone time, hindered his rehabilitation, and rendered him unable to "use the Jpay kiosk to maintain and build relationships with loved ones." The conditions at DWCC, like those at EHCC and for the same reasons, are simply not so extraordinary to be considered an atypical and significant hardship evaluated in the context of prison life. The short duration Plaintiff was confined at DWCC, coupled with the lack of extraordinary conditions described by Plaintiff, compels this Court to conclude that Plaintiff cannot state a due process claim as a result of his confinement at DWCC as a matter of law.³⁵

### ii. Plaintiff Cannot State a Claim for Lost Property

To the extent Plaintiff seeks to bring a claim as a result of his alleged lost property, such a claim also fails as a matter of law. Pursuant to well-established federal jurisprudence, an unauthorized negligent or even intentional wrongful deprivation of property by state employees

---

³² *Bailey*, 647 Fed.Appx. at 476.
³³ *See also Hernandez v. Velasquez*, 522 F.3d 556, 563 (5th Cir. 2008) (no liberty interest where inmate was held in lockdown for 13 months in a shared cell with permission to leave for only showers, medical appointments, and family visits).
³⁴ R. Doc. 3-1, p. 8. Plaintiff was transferred back to EHCC after a period of time at DWCC, though it appears he was actually kept at DWCC for 120 days. R. Docs. 3-1, p. 10; 6-1, p. 5.
³⁵ *See, e.g.*, *Wilson v. Brown*, No. 20-1005, 2020 WL 5835318 (W.D. La. Sept. 9, 2020 (confinement in administrative segregation for approximately three months even under the most isolated of conditions does not give rise to a liberty interest).

does not amount to a violation of the procedural requirements of due process if a meaningful post-deprivation remedy for the loss is available.[36] Further, the burden is on the complainant to show that available post-deprivation remedies are not adequate.[37] In the instant case, Plaintiff has not alleged that state post-deprivation remedies are unavailable to him or are inadequate. To the contrary, it is recognized that Louisiana law provides ample remedies under which Plaintiff could proceed against Defendants for recovery of his property or for reimbursement for its loss.[38] Accordingly, Plaintiff's claim relative to an alleged loss of property is without constitutional merit.

### iii. Plaintiff Has Not Stated an Equal Protection Claim

To the extent Plaintiff seeks to bring an equal protection claim,[39] such a claim fails as a matter of law. Plaintiff complains, generally, that other inmates were transitioned back into general population while Plaintiff was not.[40] Because Plaintiff does not allege he is a member of a suspect class and has been treated differently because of membership in that suspect class, the Court interprets his equal protection claim to be a "class of one" claim for equal protection.[41] To succeed with a "class of one" claim, a plaintiff must show that he or she was intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment.[42]

Plaintiff's conclusory allegations are insufficient to support a "class of one" equal protection claim, particularly where these assertions offer no basis upon which to determine that

---

[36] *Hudson v. Palmer,* 468 U.S. 517, 533 (1984); *Parratt v. Taylor,* 451 U.S. 527, 542 (1981). This is commonly referred to as the "Parratt/Hudson Doctrine."
[37] *Marshall v. Norwood,* 741 F.2d 761, 764 (5th Cir. 1984).*See also, Batiste v. Lee*, Civ. Action No. 09-674, 2009 WL 2708111 (W.D. La. Aug. 26, 2009) (dismissing *pro se* prisoner's claims for deprivation of property as frivolous and for failing to state a claim based on the *Parratt/Hudson Doctrine*)
[38] *Marshall,* 741 F.2d at 763.
[39] Plaintiff complains that "Deliberate indifference was shown to Plaintiff because other inmates who complete their DB Court sentence get their custody status changed from maximum custody and transition from a cell to general population…." R. Doc. 3-1, p. 7. It appears Plaintiff is attempting to bring an equal protection claim.
[40] R. Doc. 3-1, p. 7.
[41] *Engquist v. Oregon Dep't. of Agr.*, 553 U.S. 591, 594 (2008).
[42] *Id.* at 601.

7

persons similarly situated to the plaintiff were treated differently *without* a rational basis, and the accusations of equal protection violations appear to arise due solely to the Plaintiff's personal belief.[43] Plaintiff has not alleged that the inmates involved in the other disciplinary proceedings were similarly situated to him; rather, based on Plaintiff's allegations, the inmates were clearly distinguishable from Plaintiff. Due to the unique nature of every disciplinary proceeding and continued segregation arising from a disciplinary proceeding, it is likely a "class of one" claim is unavailable to Plaintiff.[44] Thus, this claim fails as a matter of law.

### iv. Plaintiff's Eighth Amendment Rights Have Not Been Violated

Plaintiff alleges that simply being in administrative segregation constituted cruel and unusual punishment and similarly alleges that merely being transferred to DWCC constituted a wanton infliction of pain.[45] This claim is essentially one regarding Plaintiff's conditions of confinement. The conditions under which a prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits the unnecessary and wanton infliction of pain.[46] An inmate must establish two elements—one objective, one subjective—to prevail on a conditions of confinement claim.[47] First, he must show that the relevant official denied him "the minimal civilized measure of life's necessities" and exposed him "to a substantial risk of serious harm."[48]

---

[43] An inmate cannot base an equal protection claim solely on a personal belief that he has been a victim of discrimination. *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). Specifically, vague and conclusory allegations are insufficient to state an equal protection claim. *See Pedraza v. Meyer*, 919 F.2d 317, 318 n. 1 (5th Cir.1990).

[44] *See Reagan v. Burns*, No. 16-2590, 2019 WL 6733023 at *12, n. 18 (N.D. Tex. Oct. 30, 2019) (noting that the "class of one" theory may not apply in a prison disciplinary proceeding citing *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 605 (2008), wherein the Supreme Court "concluded that government employees cannot bring class-of-one claims challenging adverse employment because such actions are discretionary, based on a vast array of subjective, individualized assessments." The court further noted that "several [other] courts have broadly interpreted *Engquist* to preclude application of the 'class of one' theory to equal protection claims in disciplinary matters because they involve authorized governmental decisions considered inherently individualized and discretionary.").

[45] R. Doc. 3-1, pp. 7 & 9.

[46] *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

[47] *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019).

[48] *Id.* (quotation marks omitted).

The "alleged deprivation" must be "objectively serious."[49] Second, the prisoner must show "that the official possessed a subjectively culpable state of mind in that he exhibited deliberate indifference" to the risk of harm.[50] "Deliberate indifference is an extremely high standard to meet."[51] "A prison official displays deliberate indifference only if he (1) knows that inmates face a substantial risk of serious bodily harm and (2) disregards that risk by failing to take reasonable measures to abate it."[52] This inquiry is "subject to demonstration in the usual ways, including inference from circumstantial evidence."[53] A "factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."[54]

The Eighth Amendment "does not mandate comfortable prisons, but neither does it permit inhumane ones."[55] At a minimum, prison officials "must provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care."[56] They cannot deprive prisoners of the "basic elements of hygiene" or the "minimal civilized measure of life's necessities."[57] Prison conditions cannot inflict "wanton and unnecessary" pain.[58]

Plaintiff has only provided conclusory statements that the conditions in segregated confinement at EHCC and the conditions at DWCC violated the Eighth Amendment. The specific conditions of which Plaintiff complain include inconveniences such as lack of access to email and limited phone time. These conditions are a far cry from depriving Plaintiff of the minimal civilized

---

[49] *Id.*
[50] *Id.* (citations and quotation marks omitted).
[51] *Id.*, (quoting *Domino*, 239 F.3d at 756).
[52] *Id.* (quotation marks omitted).
[53] *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004).
[54] *Id.*
[55] *Farmer*, 511 U.S. at 832 (internal quotation marks and citations omitted).
[56] *Id.*
[57] *Palmer v. Johnson*, 193 F.3d 346, 352-53 (5th Cir. 1999) (quotation marks omitted).
[58] *Id.* at 351.

9

measure of life's necessities, and Plaintiff has failed to state a conditions of confinement claim with respect to the conditions he was subjected to in segregation at EWCC or at DWCC.[59]

### c. Plaintiff Should Not be Given Leave to Amend

Plaintiff first Motion for Leave to File an Amended Complaint[60] requests leave to amend his complaint to clarify that he is suing Defendants in their individual and official capacities, to specify what constitutional amendments he seeks to bring claims under, to seek additional relief, and to rephrase facts already alleged in the original complaint.[61] Plaintiff also reiterates his equal protection claim, but for the reasons stated above, this claim fails as a matter of law, so to allow amendment with respect to Plaintiff's complaints regarding equal protection would be futile.[62]

With respect to due process and conditions of confinement, in addition to the conditions described by Plaintiff in the original complaint, he adds that in administrative segregation he has "limited commissary and outside recreation, and limited visitation privileges."[63] Regarding the "limited commissary," Plaintiff does not have a liberty interest in his ability to purchase items from the prison store,[64] so he cannot state a claim in this regard. Similarly, though Plaintiff may have had limited outside recreation, merely having "limited" outdoor recreation is not sufficient to state a claim of constitutional dimension.[65]

---

[59] *See Lavergne v. McDonald*, No. 19-709, 2020 WL 7090064, at *11 (M.D. La. Nov. 23, 2020) (noting inmates have no right to unlimited telephone use and no right to email).
[60] R. Doc. 6.
[61] R. Docs. 6 & 6-1.
[62] R. Doc. 6-1, p. 6.
[63] R. Doc. 6-1, p. 2.
[64] *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) ("commissary and cell restrictions as punishment are in fact merely changes in the conditions of his confinement and do not implicate due process concerns.").
[65] *See Ellis v. Crowe*, No. , 2010 WL 724158, at *13(E.D. La. Feb. 19, 2010) (no constitutional violation when inmate was permitted "some limited outdoor recreation and could not show that he was totally deprived of outdoor recreation for any significant time period or that he suffered any physical injury or violation of his constitutional rights of any kind as a result of the alleged limitations on outdoor exercise."); *Hernandez*, 522 F.3d at 560-61; *Smith v. Tanner*, No. 18-3719, 2018 WL 6204617, at *10 (E.D. La. Nov. 5, 2018) (no liberty interest in outdoor recreation).

Plaintiff additionally notes that, for the short duration he was housed at DWCC (120 days),[66] some visitors were removed from his visitors list, and he sometimes had to shower without soap because it was out of stock.[67] Plaintiff cannot state a claim from the fact that some visitors were removed from his visitors list at DWCC or that visitation was limited at EHCC. Incarcerated prisoners do not retain any absolute rights of physical association; moreover, the Fifth Circuit has held "that for convicted prisoners '[v]isitation privileges are a matter subject to the discretion of prison officials.'"[68] The due process clause does not itself give rise to a liberty interest in visitation,[69] so Plaintiff must show that the state has created an enforceable liberty interest with respect to visitation for it to be protected by the due process clause,[70] which he has failed to do. Further, occasionally having to shower without soap, while potentially uncomfortable, is not so extreme as to state a viable Eighth Amendment claim,[71] and Plaintiff does not allege that occasionally showering without soap caused him any harm. Even considering all of these newly alleged conditions together does not suffice to surpass the threshold to demonstrate a liberty interest has arisen, especially considering the relatively short duration Plaintiff has been housed in segregated confinement.[72] Though at the time Plaintiff filed his proposed amended complaint, he had been housed in segregation for 437 days, this still falls short of a claim of constitutional

---

[66] R. Doc. 6-1, p. 5.
[67] R. Doc. 6-1, p. 5.
[68] *Thorne v. Jones*, 765 F.2d 1270, 1273 (5th Cir. 1985) (quoting *Jones v. Diamond*, 636 F.2d 1364, 1376-77 (5th Cir. 1981).
[69] *Thompson*, 490 U.S. at 460-61 ("[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Id.* (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)) Further, "[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause." *Id.* at 461 (internal quotation marks and citations omitted)).
[70] *Id.* at 461.
[71] *See Johnson v. Texas Bd. of Criminal Justice*, 281 Fed.Appx. 319, 322 (5th Cir. 2008) (limits placed on soap and showers "while not comfortable, were not so extreme as to state a viable Eighth Amendment claim);
[72] *See Smith v. Tanner*, No. 18-3719, 2018 WL 6204617, at *10 (E.D. La. Nov. 5, 2018) (no liberty interest where stay in segregation deprived inmate of "certain limited prison privileges, including canteen, telephone, outdoor recreation, and mattress restrictions).

11

dimension, considering the implied threshold of two and a half years as stated by the Fifth Circuit noted above. Accordingly, allowing amendment to state these facts would be futile.

Plaintiff also raises a new claim regarding receipt of his legal mail.[73] Pursuant to 42 U.S.C. § 1997e, Plaintiff is required to exhaust administrative remedies available to him at the prison prior to commencing the civil action in this Court with respect to prison conditions.[74] Plaintiff admits that the issues regarding his mail arose in connection with filing of this suit[75] and his pleadings make clear the issues arose *after* this suit was filed.[76] Accordingly, because these claims would be subject to dismissal as unexhausted pursuant to 42 U.S.C. § 1997, leave to amend should also be denied as futile.[77]

Plaintiff's second Motion for Leave to File an Amended Complaint seeks to amend to describe "the Constitutional violations that have taken place since the preparation and filing of this civil action."[78] As discussed above, Plaintiff was required to exhaust administrative remedies *prior*

---

[73] R. Doc. 6-2, p. 3.
[74] 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."
[75] Plaintiff states in R. Doc. 7-1, p 6 that he is currently exhausting his remedies with respect to the mail claim, but the claim had to be exhausted *prior* to the filing of this suit. 42 U.S.C. § 1997e.
[76] Throughout Plaintiff's various pleadings and memoranda, he complains that mail regarding this action is being blocked or delayed. Because Plaintiff's problems with mail regarding this litigation arose after suit was filed, it is impossible for Plaintiff to have exhausted this claim prior to filing this suit. Further, Plaintiff attached the ARPs forming the basis of this suit to his first amended complaint and neither ARP mentions any problems with mail. R. Doc. 3-1, pp. 22-28. Plaintiff also makes abundantly clear that his issues with mail did not arise until after the filing of this suit in his "Declaration" filed in support of his Motion for Preliminary Injunction, wherein Plaintiff states "since the preparation and filing *of this suit*, the defendants have developed an ongoing practice of censoring my …mail." R. Doc. 12-3, p. 7. Accordingly, leave to amend to assert a claim regarding access to the courts due to a mail block or mail delay would be futile. If Plaintiff wishes to bring this new claim, he should assert it in a new action. To the extent any of the factual allegations in either proposed amended complaint sound in retaliation, amendment should also be denied with respect thereto because the alleged motive for retaliation is the filing of the instant suit, so any retaliation claim based on the failing of this suit cannot be exhausted. Thus, amendment would be futile to state a retaliation claim based on the filing of this litigation, as such a claim would be subject to dismissal as unexhausted.
[77] *See Feemster v. Chapa*, 2018 WL 1310035, at *3 (S.D. Tex. March 13, 2018) (denying a request to amend because the plaintiff's new proposed claims of "denial of access to courts are wholly unrelated to the claims raised in his original and amended complaints");
[78] R. Doc. 10, p. 1. Plaintiff also complains about his continued confinement in administrative segregation (R. Doc. 10-1, p. 14), but the Court, in its merits analysis of Plaintiff's claim, has already considered the fact that Plaintiff remains in segregation and has determined that he still fails to state a claim of constitutional dimension, so amendment to state what the Court has already considered and recommended be dismissed as legally frivolous would be futile.

to initiating this civil action pursuant to 42 U.S.C. § 1997e.Because all alleged constitutional violations stated in the proposed amended complaint occurred *after* the filing of this lawsuit, it is clear that Plaintiff did not exhaust administrative remedies with respect to any of these claims. Accordingly, because these claims are unexhausted and would be properly dismissed as such, Plaintiff's second Motion for Leave to File an Amended Complaint should also be denied as futile.

### d. The Court Should Decline to Exercise Supervisory Jurisdiction Over Any Potential State Law Claims

Insofar as Plaintiff seeks to have this Court exercise supplemental jurisdiction over potential state law claims, this Court should decline to do so. A district court is authorized to decline supplemental jurisdiction over such claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.[79] Since Plaintiff has failed to state a valid federal claim, it is appropriate for the Court to decline to exercise supplemental jurisdiction over any potential state law claims.

### e. Plaintiff's Motions for Preliminary Injunction Should Be Denied

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right."[80] The decision whether to grant or deny a request for a preliminary injunction is within the sound discretion of the Court.[81]

At all times, the burden of persuasion to obtain a preliminary injunction or temporary restraining order remains with the plaintiff as to each of the four required elements. Specifically,

---

[79] 28 U.S.C. § 1367.
[80] *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations and quotations omitted).*See* also *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc*., 878 F.2d 806, 809 (5th Cir. 1989) (preliminary injunctive relief "is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors");
[81] *See Allied Mlttg. Grp., Inc*., 878 F.2d at 809.

13

a plaintiff must establish: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest.[82] If a plaintiff fails to meet his burden regarding any of the necessary elements, the Court need not address the other elements necessary for granting a preliminary injunction.[83]

If the above recommendation to dismiss this matter as frivolous pursuant to 28 U.S.C. §§ 1915(e) and 1915A is adopted, then any request for injunction in this case fails because Plaintiff has failed to state any cognizable federal claim, and therefore, Plaintiff does not have any likelihood of success on the merits of any request for injunctive relief he may bring related to the instant complaint. Accordingly, if the above recommendation is adopted, the Motions for Preliminary Injunction[84] should be denied.

## RECOMMENDATION

**IT IS RECOMMENDED** that Plaintiff's Motions for Leave to File Amended Complaints[85] be **DENIED** as futile, the Court decline to exercise supplemental jurisdiction over Plaintiff's potential state law claims, Plaintiff's Motions for Preliminary Injunction[86] be **DENIED**, Plaintiff's federal claims be **DISMISSED, WITH PREJUDICE**, as legally frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A,[87] and that this case be **CLOSED**.

---

[82] See *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008).
[83] *See Roho, Inc. v. Marquis*, 902 F.2d 356, 261 (5th Cir. 1990) (declining to address the remaining elements necessary to obtain a preliminary injunction after finding that the plaintiff failed to show a substantial likelihood of success on the merits).
[84] R. Docs. 7 & 12.
[85] R. Docs. 6 & 10.
[86] R. Docs. 7 & 12.
[87] Plaintiff is advised that 28 U.S.C. § 1915(g) provides that, "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [Proceedings *in forma pauperis*] if the prisoner has, on 3

## ORDER

Considering the above recommendation, **IT IS ORDERED** that Plaintiff's Motion to Appoint Counsel[88] be **DENIED** without prejudice to refiling in the event the above recommendations are not adopted.

Signed in Baton Rouge, Louisiana, on December 21, 2020.

*[signature]*

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

---

or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." Should this Report and Recommendation be adopted, the Ruling in this matter will constitute a strike.
[88] R. Doc. 8.